# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:05CV260-V

| | |
|---|---|
| LOUISA C. CURTIS,<br>　　　　Plaintiff,<br><br>　　vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br>　　　　Defendant. | )<br>)<br>)<br>)　**MEMORANDUM AND RECOMMENDATION**<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed March 8, 2006; and Defendant's "Motion For Summary Judgment" (document #13) and "Memorandum in Support of the Commissioner's Decision" (document #13), both filed April 20, 2006. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

Sometime in September 2002, the Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging she was unable to work as of January 1, 2002 due to "fibromyalgia, thyroid disease, osteoarthritis, diverticulitis, asthma, hay fever, pre-diabetic [sic], nerves, [and] ulcer." (Tr.

102.) The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on September 15, 2004. On December 3, 2004, the ALJ issued a decision denying the Plaintiff's claim because she retained the residual functional capacity to perform a "significant range of medium work." The Plaintiff subsequently filed a timely Request for Review of Hearing Decision. On August 9, 2005, the Appeals Council denied the Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on October 7, 2005, raising a single issue on appeal: whether the ALJ should have found that an alleged impairment to her right shoulder rendered her incapable of performing medium work. The parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

Relevant to the present appeal, the Plaintiff was 45 years-old at the time of the hearing, had graduated high school, and had relevant work experience as a restaurant, cotton mill, and furniture worker.

The Plaintiff testified at the hearing that she was treated for fibromyalgia, asthma and arthritis; that she dropped things with her right hand due to paralysis on the right side, that she had pain in the right side of her body, including in her right shoulder; that she took medication for arthritis, used a TENS unit on her back three to four times per week, and did water therapy; that exercise relieved at least some of her pain; and that she lived alone, did "some" shopping and cooking, drove a car, crocheted, and visited her sister.

In assessing the claimant's residual functional capacity ("RFC"), medical experts for North Carolina Disability Determination Services ("NCDDS") opined that the Plaintiff could perform

medium exertional work, that is, that she could lift and carry 25 pounds frequently and 50 pounds occasionally, could sit/stand/walk for about 6 hours in an eight-hour workday, and had no limitations in pushing or pulling, with only a nonexertional limitation of avoiding concentrated exposure to fumes, dust, or gases due to her asthma.[1]

Relevant to the narrow issue raised on appeal, the undisputed medical records (presented to the ALJ at or after the hearing) establish that in November 2001, Plaintiff complained to her treating physician, John Winfield, M.D., of back pain and numbness in her right leg, both of several years duration, but did not appear to be in acute distress and was able to stand on her own and could walk without assistance. X-rays of her lumbar and thoracic spine were normal and showed only multi-level spondylosis and spurring that were not unusual for a person of Plaintiff's age, and a subsequent MRI of her lumbar spine was normal.

In December 2001, Plaintiff was given a sacroiliac injection, which improved but did not completely resolve her pain and Plaintiff reported that she was still bothered with numbness in her right leg. An EMG and nerve conduction velocity study of her right leg were negative.

On February 6, 2002, Plaintiff began physical therapy for her back and right leg. On March 12, 2002, after ten physical therapy sessions, Plaintiff reported to her doctor that her pain had decreased from a "5" on a scale from 1 to 10 to a "3." On March 25, 2002, Plaintiff was given a TENS unit for home use, instructed in its use, and discharged from physical therapy.

On May 24, 2003, Dr. Eric J. Melvin conducted a consultative examination. The Plaintiff told Dr. Melvin that she had been diagnosed with fibromyalgia a few months earlier, which was the

---

[1]The Plaintiff does not dispute that a non-exertional limitation for asthma requiring her to avoid excessive amounts of dust and other pulmonary irritants has minimal impact on the broad range of jobs available because most job environments do not involve a great deal of fumes, dust, smoke, etc. See Social Security Ruling 85-15.

major reason she could not work, but that she had been placed on an exercise regimen and was undergoing aquatic exercise that helped "some." Dr. Melvin noted that Plaintiff was able to walk without difficulty and without any limp, was in no acute distress, and had no shortness of breath. On examination, her lungs were clear to auscultation with good air movement and no evidence of wheezing. Although trigger points consistent with fibromyalgia were present, Plaintiff's upper and lower extremity strength was 5/5, as was her grip strength on both the right and left and no muscle atrophy was observed. Dr. Melvin noted that Plaintiff's gross and fine manipulation were intact with "excellent" pinching, grasping and buttoning and unbuttoning shirts. The range of motion in Plaintiff's wrists, elbows, shoulders, cervical and lumbar spine, hips, knees, and ankles was within normal limits.

In August 2003, Plaintiff complained of pain in her right hip and her right shoulder, but examination revealed only that there was positive impingement sign at the right shoulder with decreased abduction. Dr. Winfield diagnosed "impingement versus rotator cuff right shoulder" and injected Plaintiff's shoulder accordingly. When Dr. Winfield next saw Plaintiff in December 2003, he reported that Plaintiff was "really doing fairly well," that her shoulder was better since the injection, and that the range of motion in her right shoulder was improved although there was still a decrease in abduction. At that time, Dr. Winfield's only diagnostic impression was fibromyalgia.

On January 27, 2004, Plaintiff was seen at Caldwell Memorial Hospital with complaints of blunt trauma injury to her right shoulder as the result of a fall. X-rays were normal. An examination revealed that Plaintiff's right shoulder was not tender or swollen and that Plaintiff had a full range of motion in her right shoulder.

In June 2004, after performing a complete musculoskeletal examination, Dr. Winfield did not

indicate any limitation in Plaintiff's right shoulder and his impression was only "fibromyalgia with low back pain."

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[2] The ALJ considered the above-recited evidence and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered fibromyalgia, asthma and mild osteoarthritis of the hips, which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that Plaintiff was unable to perform her past relevant work; that the Plaintiff was a "younger individual" with a high school education, but no transferable skills; that the Plaintiff had the residual functional capacity

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

for a "significant range of medium work";³ and that Medical-Vocational Rule 203.28 mandated a finding of "not disabled."

On appeal, the Plaintiff maintains that the ALJ erred when he concluded that her alleged shoulder impairment did not prevent her from performing medium work, but does not contend that her shoulder pain actually rendered her disabled or prevented her from performing either light or sedentary work. See Plaintiff's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12). As the Defendant points out in her brief, however, even assuming arguendo that the Plaintiff could not perform medium work, under Medical-Vocational Rules 201 and 202, a worker with her age and education – a 45-year-old high school graduate – with the ability to perform light, or even sedentary, work is not disabled for Social Security purposes. Moreover, the undersigned finds that there is substantial evidence supporting the ALJ's findings concerning the Plaintiff's alleged shoulder impairment and residual functional capacity, and his ultimate determination that the Plaintiff was not disabled.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited her ability to work. Agency medical experts determined that the Plaintiff had

---

³Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, then she also can do sedentary and light work. See 20 C.F.R. § 416.967(c); SSR 83-10.

the residual functional capacity for medium work – could occasionally lift 50 pounds and frequently lift 25 pounds; that she could sit, stand, and/or walk 6 hours in an 8-hour workday; and that her ability to push and/or pull was unlimited – with the only nonexertional limitations of avoiding concentrated exposure togas, odors, or fumes, which, as noted above, does not place a significant limitation on the medium jobs available.

Moreover, no physician ever placed any restrictions on the Plaintiff's use of her shoulder. Indeed, the undisputed medical record reflects that the Plaintiff did not complain of shoulder pain until August 2003, when Dr. Winfield diagnosed nerve impingement and injected Plaintiff's shoulder. When Dr. Winfield next saw Plaintiff in December 2003, he reported that Plaintiff was "really doing fairly well," that her shoulder was better since the injection, and that range of motion was normal. At that time, Dr. Winfield's only diagnostic impression was fibromyalgia.

On January 27, 2004, Plaintiff was seen at Caldwell Memorial Hospital with complaints of blunt trauma injury to her right shoulder as the result of a fall, but X-rays were normal, Plaintiff's right shoulder was not tender or swollen, and she had full range of motion.

In June 2004, after performing a complete musculoskeletal examination, Dr. Winfield did not indicate any limitation in Plaintiff's right shoulder and his impression was only "fibromyalgia with low back pain."

During a consultative examination, Dr. Melvin found that Plaintiff's strength and range of motion, including in her right shoulder, were normal.

The medical record is also clear that Plaintiff's shoulder pain, and complaints of pain generally, were treated conservatively and responded to medication and physical therapy. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical

8

regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The record is also clear that the Plaintiff engaged in significant daily life activities during the subject period, such as bathing and dressing herself, cooking, driving, shopping, and socializing; and that she was able to live alone. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work," which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take

9

into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's fibromyalgia, asthma and mild osteoarthritis of the hips – which <u>could</u> be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of her limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between the Plaintiff's claims of inability to work and her objective ability to carry on a moderate level of daily activities, that is, to live alone, drive, do housework and shopping, and visit with family and friends, as well as the objective medical record discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's

responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #11) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #13) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond

v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED.**

Signed: April 26, 2006

*[signature: Carl Horn, III]*

Carl Horn, III
United States Magistrate Judge